**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISON**

| | |
|---|---|
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ ) | |
| KIM LAIN ) | |
| 118 Whiting Ave. ) | |
| Galveston, TX 77550 ) | |
| ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | Case No. 23-cv-404 |
| ) | |
| U.S. DEPARTMENT OF HOMELAND ) | |
| SECURITY ) | |
| 2707 Martin Luther King Jr., Ave., S.E. ) | |
| Washington, D.C. 20528 ) | |
| ) | |
| *Defendant.* ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ ) | |

## COMPLAINT AND PRAYER FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff KIM LAIN ("Plaintiff") for her complaint against Defendant U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS" or "Department") alleges on knowledge as to Plaintiff, and on information and belief as to all other matters, as follows:

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel the production of information from DHS concerning Secretary Alejandro N. Mayorkas's ("Secretary Mayorkas" or "the Secretary") knowledge of human trafficking organizations' use of wristbands or bracelets to identify and organize aliens smuggled across the Southwest Border.

2.      Secretary Mayorkas testified before the Senate Judiciary Committee on March 28, 2023.  *Oversight of the Department of Homeland Security,* hearing before the S. Jud. Comm., CQ Trans., 118th Cong (2023) ("March 28, 2023 Hearing") (Ex. 1).  At the hearing, Senator Ted

1

Cruz confronted Secretary Mayorkas with a bag of wristbands collected from the Southwest Border that had clearly been used by human smugglers to tag individuals they were smuggling. When asked, Secretary Mayorkas stated he was unaware of what the wristbands were, or what they were used for.

3.      Secretary Mayorkas's testimony on this point was immediately the subject of widespread and exceptional media interest.  This media coverage has raised questions concerning Secretary Mayorkas' competency in Office and whether he was truthful in his Senate Judiciary Committee testimony.  In addition, intense media coverage of calls for the Secretary's resignation or impeachment specifically citing his March 28, 2023 testimony have surfaced. Finally, the House Homeland Security Committee, the Committee of the House of Representatives with legislative jurisdiction over the Department of Homeland Security has requested records from Secretary Mayorkas about his knowledge of the use of wristbands or bracelets to facilitate human smuggling.  Letter from Hon. Mark Green to Hon. Alejandro Mayorkas, Secretary, Dep't of Homeland Security (Aug. 21, 2023) (Ex. 2).

4.      The requested information is of immense public interest.  Plaintiff's FOIA Request is narrowly targeted and seeks records that would answer one seminal question:  What is the Homeland Security Secretary's understanding of a widely known method human trafficking organizations use to prey off of illegal immigration into the United States?  *See* FOIA Request (Apr. 19, 2023) ("Request" or "Plaintiff's FOIA Request") (Ex. 3).  The records responsive to the Request would provide answers to that question and help the public assess Secretary Mayorkas's competence for the high Office he holds and his candor with Congress.

5.      Human smuggling and trafficking is a lucrative business for criminal enterprises operating at and near the Southwest Border. These organizations generate estimated billions of

dollars annually from human smuggling and trafficking operations. *See* Immigration and

Customs Enforcement, *Human Smuggling Equals Grave Danger, Big Money* (Jan. 26, 2022)

(Ex. 4) ("Moving human beings as cargo pays in the billions of dollars for transnational criminal

smuggling organizations."); Dep't. of Homeland Security, *Fact Sheet: Counter Human Smuggler*

*Campaign Update* (Oct. 6, 2022)  (Ex. 5) ("Human smuggling syndicates are run like businesses,

drawn by high profit margins in what is now a multi-billion dollar operation."); *Biden and*

*Mayorkas' Open Border:  Advancing Cartel Crime in America*:  *Hearing Before the H. Comm.*

*on Homeland Security*, CQ Trans., 118th Cong.(July 19, 2023) (Statement of Chairman Mark

Green) (Ex. 6) ("In 2021 alone the cartels made an estimated $13 billion just from human

trafficking and smuggling.").  Victims of human trafficking and smuggling face abhorrent

conditions and experience horrific atrocities during their journey to the Southwest Border. *See*

Dep't of Homeland Security, *Human Trafficking 101* (June 18, 2020) (Ex. 7) (describing sex

trafficking, forced labor, and other abuses victims of human trafficking suffer); John Davis,

*Stashed Away*, U.S. Customs and Border Protection Frontline Magazine (June 12, 2023) (Ex. 8)

(describing sexual abuse, extortion, and unsanitary conditions smuggled migrants experience).

6.      While this case focuses on a narrow topic stemming from the Secretary's

testimony about a discrete immigration issue at a U.S. Senate hearing, it cannot be separated

from its broader context.  There has been widespread and continuous media coverage of the

Biden Administration's border policies.  In Fiscal Year ("FY") 2023 (October 1, 2022 through

September 30, 2023) Customs and Border Protection ("CBP") encountered a record 2,475,669

aliens at the southwest border. *Southwest Land Border Encounters*, *found at*

*https://www.cbp.gov/newsroom/stats/southwest-land-border-encounters* (last visited Dec. 14,

2023).  The FY 2023 Southwest Border encounter totals surpassed the previous record, set in FY

2022 of 2,378,944.  *Id.*  In the prior year, FY 2021, CBP reported a then-record 1,754,686

Southwest Border encounters.  *Id.*

7.     The press and Congressional hearing rooms are full of detailed accusations that

both the Biden Administration's polices, and the Secretary's execution of those policies, are

responsible for the current crisis at the Southwest Border.  Indeed, the situation at the Border is

so grave that members of the House of Representatives have already filed articles of

Impeachment against Secretary Mayorkas.  *See* H. Res. 8, 118th Cong.; H. Res 89, 118th Cong.;

H. Res. 411, 118th Cong.; H. Res. 470, 118th Cong.; H. Res. 477, 118th Cong.  Fourteen United

States Senators have offered a Senate resolution expressing belief that Secretary Mayorkas "does

not have the confidence of the Senate or of the American people to faithfully carry out the duties

of his office."  S. Res. 169, 118th Cong.  The Secretary has taken the extraordinary step of

expending at least $1.5 million of taxpayer money to an elite international law firm to defend

him in any future impeachment proceedings.  *See Retaining Private Counsel to Represent DHS

Secretary in Impeachment Processes*, 47 Op. O.L.C. __. 2023 WL 2468411 (OLC Jan. 4, 2023);

PIID 70RDAD23C00000002.  The information sought in Plaintiff's FOIA Request is relevant to

these proceedings.

## **PARTIES**

8.     Plaintiff Kim Lain ("Lain") is a Galveston, Texas-based contributor for *The Daily

Signal.  Kim Lain, Daily Signal*, found at https://www.dailysignal.com/author/kimlain/ (last

visited Dec. 14, 2023).  Lain both lives and works in Galveston.  She has lived in Galveston for

approximately five years.  Lain's work for *The Daily Signal* focuses on investigative journalism

that probes the local impacts of the Administration's policies.  Relevant here, Lain has published

an article reporting on the local reaction to Secretary Mayorkas' Senate Judiciary Committee

testimony concerning wristbands.  *See*, Kim Lain, *Ignorance Isn't Bliss:  Mexican Cartels'*
*Wristbands Underscore Mayorkas' Willful Blindness on Border*, The Daily Signal, (Aug. 10,
2023) *found at* https://www.dailysignal.com/2023/08/10/ignorance-isnt-bliss-mexican-cartels-
wristbands-underscore-mayorkas-willful-blindness-on-border/.  This work highlights how both
the failure to enforce immigration laws under the Biden Administration and the incredulous
nature of Secretary Mayorkas' wristband testimony informs Lain's purpose in filing the Request
to obtain additional facts for future reporting.  *The Daily Signal* is a "digital-first, multimedia
news platform" that "delivers investigative and feature reporting and the most important political
news and commentary."  *About The Daily Signal*, *found at* https://www.dailysignal.com/daily-
signal (last visited Dec. 14, 2023).  *The Daily Signal* is the news organization of the Heritage
Foundation, a Washington, D.C.-based nonpartisan public policy organization.  Heritage is a not-
for-profit section 501(c)(3) organization which engages in substantial dissemination of
information to the public.

9.      Defendant DHS is a federal agency of the United States within the meaning of
5 U.S.C. § 552(f)(1) whose mission statement reads "with honor and integrity, we will safeguard
the American people, our homeland, and our values." DHS Mission, *found at*
https://www.dhs.gov/mission (last visited Dec. 14, 2023).

## JURISDICTION AND VENUE

10.     This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) because the
Plaintiff resides in the Southern District of Texas and 28 U.S.C. § 1331 because the resolution of
disputes under FOIA presents a federal question.

11.     Venue is proper in this Court under both 28 U.S.C. § 1391(b) because a substantial
part of the events or omissions giving rise to this claim occurred in the Galveston Division of the

Southern District of Texas, and under 5 U.S.C. § 552(a)(4)(B) in that Plaintiff "resides" in the Galveston Division of the Southern District of Texas and Plaintiff also maintains her "principal place of business" in the Galveston Division of the Southern District of Texas.

## BACKGROUND

12.     On March 28, 2023, Secretary Mayorkas testified before the U.S. Senate Judiciary Committee.  *See* March 28, 2023 Hearing.

13.     At the hearing, Senator Ted Cruz showed the Secretary images of wristbands that human trafficking organizations use to organize migrants they help smuggle across the Southwest border.  When presented with the images, the Secretary said he did not know what they were.

> Sen. Cruz:  . . . This is a photograph from just one day along the Rio Grande of hundreds of thousands of people walking across the border.  You have allowed this to happen. The photograph that was before, what are these wristbands?
>
> Secretary Mayorkas: I don't know what they are.

*Id*. at 93.  The following image depicts the wristbands Senator Cruz questioned the Secretary about and includes the Senators' reaction to the Secretary's testimony that he did not know what they were:

6



14.     Senator Cruz was incredulous of this testimony.  To wit:

Sen. Cruz:  You don't know what they are? Mr. Secretary, you have testified to
the American people, you're incompetent at your job because I've been to the
Southern border.  And if you go to the southern border, you will see thousands of
these wristbands, because illegal immigrants wear them., the drug cartels, ever
color corresponds to how many thousands of dollars we owe the cartels

You have turned these cartels into multibillion dollar criminal organizations.  And
these are modern day leg irons because these are children being sold into sex
slavery and you don't even know what they are.  That is astonishing.

*Id.* at 94.  While he delivered this statement, Senator Cruz produced a wristband he

presumably picked up from the Southwest border:



15.      It is widespread and common knowledge among individuals that follow border security matters that human trafficking organizations use wristbands to organize their operations. *See* Adrees Latif et. al., *Color-coded passage: Why Smugglers are Tagging U.S.-Bound Migrants with Wristbands*, Reuters (Mar. 9, 2021) *found at* https://www.reuters.com/article/us-usa-immigration-border-idUSKBN2B12E6 (reporting on "hundreds of colored plastic wristbands" discarded by illegal aliens near Penitas, Texas).  Members of the media who have visited the Southwest Border report seeing hundreds of discarded wristbands on the U.S side of the border. *See, e.g.,* X, @BillFOXLA, Mar. 29, 2023, *available at* https://twitter.com/BillFOXLA/status/1641189017411805185?lang=en ("Watched back some of DHS Secretary Mayorkas' testimony yesterday and saw he claimed to not know about cartel wristbands used for human smuggling at border.  That is remarkable, if true.  At popular crossing areas in the RGV, you'll find them discarded by the hundreds on US side."); X, @GuyPBenson, Mar. 30, 2023, *available at* https://twitter.com/guypbenson/status/1641493057567698956 ("Absolutely shocking.  How is it possible that Mayorkas has never heard of the

cartel/trafficking $$$ bracelets?  They were *everywhere* along the border when I visited.").

The Request attached an Appendix containing news articles expressing incredulity and dismay

about the Secretary's lack of knowledge about smugglers' use of wristbands.  *See* Request

Appendix A.  A few examples include:

- **Bill Melugin (Fox News Interview):**  "I had to pick my jaw up off the floor when I heard Secretary Mayorkas say he didn't know what they were.  How is that possible?  He is the Secretary of Homeland Security.  We are more than two years into this border crisis.  It's like he has not talked to a single one of his agents on the ground about what they're experiencing down there? *This is not a new thing.  This is not a secret*."  App. A at 1–2 (emphasis added).

- **Jon Gabriel (Yahoo News Op-Ed):**  Called for Secretary Mayorkas' resignation or removal from office citing, in part, his lack of knowledge about wristbands and his refusal to address Senator Cruz's questions on the topic.  App. A at 3–5.

- **Sandra Sanchez (Border Report)**:  "The wristbands—like the kind given for carnival rides, or entrance to night clubs or concerts—often bear the words *'llegadas*,' which means arrivals in Spanish; or '*entregadas*,' which means delivered.  Some read *'entregas,'* which mean deliveries.  The different wristband colors indicate how much they have paid; where they cross; if they have tried to cross before; and if this is their last time trying to get across without having to pay again, several officials have told Border Report.  It's all part of a highly organized system the Mexican drug cartels use to mark and identify different groups of migrants they are smuggling into the United States."  App. A at 16–18.

- **Victor Nava (New York Post)**:  Reported on Senator Cruz's exchange with the Secretary and mentioned the wristband testimony in connection to calls for the Secretary's resignation or impeachment.  App. A at 19–22.

### PLAINTIFF'S FOIA REQUEST

16.     Plaintiff submitted her FOIA Request on April 19, 2023.

17.     The Request sought DHS records related to the Secretary's knowledge of human smuggling organizations' use of wristbands when he testified before the Senate Judiciary Committee.

18.     The Request was highly targeted and only sought records from a narrow set of custodians:  (1) Secretary Mayorkas, (2) the office of the Executive Secretary, and (3) any person within Secretary Mayorkas' Immediate Office.  Request at 1.

19.     Specifically, the Request sought all records containing the terms "wristband" or "bracelet." *Id.*   The Request sought records for the limited timeframe of January 1, 2021 to the present.  *Id.*

20.     The Request sought a fee waiver based on the public interest in determining whether Secretary Mayorkas had been informed of the use of wristbands by human trafficking organizations at the Southwest border despite his testimony to the contrary before the Senate Judiciary Committee.  In addition, Plaintiff is an investigative journalist for *The Daily Signal*, a major news outlet operated by the Heritage Foundation.  *Id.* at 3–4.

21.     The Request sought Expedited Processing pursuant to 6 C.F.R. § 5.5(e)(1)(iv), because Secretary Mayorkas's testimony concerning human smugglers use of wristbands is "a matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affect public confidence."

22.     The Request attached five appendices totaling 694 pages that included media commentary about the Secretary's March 28 testimony, transcripts and other materials from the

hearing, and media commentary concerning the crisis at the Southwest border. *See* Appendix A–

E, *available at* https://thf_media.s3.amazonaws.com/2023/Oversite_Project/Appendices.pdf.

23.     The Request discussed the immense media and Congressional interest in

Secretary Mayorkas's testimony that he did not know that human smugglers use wristbands to

organize illegal aliens' entrances into the United States at the Southwest border. Request at 5–

11. It explained further that the Secretary's testimony was relevant to the ongoing discussion of

the Secretary's competence and fitness for Office, his role in failing to control record levels of

illegal immigration during his tenure, and the debate over whether the House of Representatives

should initiate impeachment proceedings against the Secretary.

## DHS HAS IGNORED PLAINTIFF'S FOIA REQUEST

24.     On May 10, 2023, Plaintiff sent a letter via email to DHS requesting information

about the Request. Letter from Kim Lain to DHS Privacy Office (May 10, 2023) (Ex. 9). The

letter reiterated both the importance of the Request, and the Request's clear entitlement to

expedited processing given the widespread and exceptional media interest the Secretary's

apparent lack of knowledge about the use of wristbands at the Southwest border and attendant

questions. *Id.* The letter also said that if the Department did not act on Plaintiff's request for

expedited processing by May 12, 2023, she would initiate this action. *Id.* at 2.

25.     On July 18, 2023—more than three months after Plaintiff submitted the

Request—DHS acknowledged receipt of the Request and assigned it tracking number 2023-

HQFO-01407. Email from DHS to Kim Lain (July 18, 2023) ("Acknowledgment Letter") (Ex.

10). The Acknowledgment Letter noted that Defendant received the Request on July 19 2023.

The Acknowledgment Letter invoked the 10-day extension allowed to DHS under 6 C.F.R.

§ 5.5(c). *Id.*

26.     The Acknowledgment Letter did not address Plaintiff's request for a fee waiver or request for expedited processing.

27.     A review of the DHS portal indicates that the decision on granting Plaintiff's fee waiver and expedited processing requests are "pending decision," the Request is on the "complex" processing track, and that the overall request status is in the "searching for records" phase.  SecureRelease Portal, My Requests, Kim Lain (last visited Dec. 18, 2023) (Ex. 11)

28.     246 days later, Defendant has failed to make any meaningful progress on the Request.

29.     Ten calendar days from April 19, 2023 is April 29, 2023.

30.     Twenty business days from April 19, 2023 is May 17, 2023.

31.     Thirty business days from April 19, 2023 is June 1, 2023.

## FIRST CLAIM FOR RELIEF
### Violation FOIA, 5 U.S.C. § 552
### Failure to Conduct Adequate Searches for Responsive Records.

32.     Plaintiff re-alleges the foregoing paragraphs as if fully set out herein.

33.     FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration."  Attorney General, *Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

34.     Plaintiff properly requested records within the possession, custody, and control of Defendant.

35.     Defendant is subject to FOIA and therefore must make reasonable efforts to search for requested records.

36.     Defendant has failed to promptly review agency records for the purpose of locating and collecting those records that are responsive to Plaintiff's FOIA Request.

37.     Defendant's failure to conduct searches for responsive records violates FOIA and DOJ regulations.

38.     Plaintiff has a statutory right to the information they seek.

39.     Defendant is in violation of FOIA.

40.     Plaintiff is being irreparably harmed by reason of Defendant's violation of FOIA. Plaintiff is being denied information to which she is statutorily entitled and that is important to carrying out Plaintiff's functions as an investigative journalist.  Plaintiff will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

41.     Plaintiff has no adequate remedy at law.

42.     Plaintiff has constructively exhausted her administrative remedies.

## SECOND CLAIM FOR RELIEF
### Violation of FOIA, 5 U.S.C. § 552
### Wrongful Withholding of Non-Exempt Responsive Records

43.     Plaintiff re-alleges the foregoing paragraphs as if fully set out herein.

44.     FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration."  Attorney General, *Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

45.     Plaintiff properly requested records within the possession, custody, or control of Defendant.

46.     Defendant is subject to FOIA, and therefore must release to a FOIA requester any non-exempt records and provide a lawful reason for withholding any records.

47.     Defendant is wrongfully withholding non-exempt records requested by Plaintiff by failing to produce any records responsive to her FOIA Request.

48.     Defendant is wrongfully withholding non-exempt-agency records requested by Plaintiff by failing to segregate exempt information in otherwise non-exempt records responsive to Plaintiff's FOIA Request.

49.     Defendant's failure to provide all non-exempt responsive records violates FOIA and DOJ regulations.

50.     Plaintiff has a statutory right to the information she seeks.

51.     Defendant is in violation of FOIA.

52.     Plaintiff is being irreparably harmed by reason of Defendant's violation of FOIA. Plaintiff is being denied information to which she is statutorily entitled and that is important to carrying out Plaintiff's functions as an investigative journalist.   Plaintiff will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

53.     Plaintiff has no adequate remedy at law.

54.     Plaintiff has constructively exhausted her administrative remedies.

### THIRD CLAIM FOR RELIEF
**Violation of FOIA, 5 U.S.C. § 552**
**Wrongful Denial of Fee Waiver**

55.     Plaintiff re-alleges the foregoing paragraphs as if fully set out herein.

56.     FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration."  *Attorney General, Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

57.     Plaintiff properly requested records within the possession, custody, or control of Defendant.

58.     Defendant has constructively denied Plaintiff's application for a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(ii) & (iii) and 28 C.F.R. §16.10(k).

59.     The Request does not have a commercial purpose because Plaintiff is an investigative journalist for *The Daily Signal*, a major newspaper, and release of the information sought does not further Plaintiff's commercial interest.

60.     Plaintiff is a member of the news media as she "gathers information of potential interest to a segment of the public, use[] . . . [her] editorial skills to turn the raw materials into a distinct work, and distribute[] that work to an audience" via Heritage's major news outlet, *The Daily Signal*.  5 U.S.C. § 552(a)(4)(a)(ii).

61.     Disclosure of the information sought by the Request also "is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government."  5 U.S.C. § 552(a)(4)(A)(iii).

62.     Defendant has "failed to comply with a[]time limit under paragraph (6)" as to the Request.  5 U.S.C. § 552(a)(4)(A)(viii)(I).

63.     Plaintiff has a statutory right to a fee waiver.

64.     Defendant is in violation of FOIA by denying a fee waiver.

65.     Plaintiff is being irreparably harmed by reason of Defendant's violation of FOIA. Plaintiff is being denied a fee waiver to which she is statutorily entitled and that is important to carrying out Plaintiff's functions as an investigative journalist.  Plaintiff will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

66.     Plaintiff has no adequate remedy at law.

67.     Plaintiff has constructively exhausted her administrative remedies.

**FOURTH CLAIM FOR RELIEF**
**Violation of FOIA, 5 U.S.C. § 552**
**Statutory Bar Against Charging Fees**

68.     Plaintiff re-alleges the foregoing paragraphs as if fully set out herein.

69.     FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration."  Attorney General, *Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

70.     Plaintiff properly requested records within the possession, custody, or control of Defendant.

71.     The Request does not have a commercial purpose because Plaintiff is an investigative journalist for *The Daily Signal*, a major newspaper, and release of the information sought does not further Plaintiffs' commercial interest.

72.     Plaintiff is a member of the news media as she "gathers information of potential interest to a segment of the public, use[] . . . [her] editorial skills to turn the raw materials into a distinct work, and distribute[] that work to an audience" via Heritage's major news outlet, *The Daily Signal*.  5 U.S.C. § 552(a)(4)(a)(ii).

73.     Disclosure of the information sought by the Request also "is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government."  5 U.S.C. § 552(a)(4)(A)(iii).

74.     Defendant has "failed to comply with a[]time limit under paragraph (6)" as to the Request.  5 U.S.C. § 552(a)(4)(A)(viii)(I).

75.     Defendant is currently statutorily barred from charging fees related to Plaintiffs' FOIA Request.  Therefore, Plaintiffs have a statutory right to have their request processed without being charged any fees.

76.     Plaintiff is being irreparably harmed by reason of Defendant's violation of FOIA. Plaintiff will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

77.     Plaintiff has no adequate remedy at law.

78.     Plaintiff has constructively exhausted her administrative remedies.

**FIFTH CLAIM FOR RELIEF**
**Violation of FOIA, 5 U.S.C. § 552**
**Wrongful Denial of Expedited Processing**

79.     Plaintiff re-alleges the foregoing paragraphs as if fully set out herein.

80.     FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration."  *Attorney General Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

81.     Plaintiff properly requested records within the possession, custody, or control of Defendant.

82.     Plaintiff properly asked that DHS expedite the processing of Plaintiff's Request because the controversy surrounding Secretary Mayorkas' March 28, 2023 testimony and the Department's response to human trafficking on the Southwest Border is "a matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affect public confidence." 6 C.F.R. § 5.5(e)(1)(iv).

83.     Defendant refused to expedite Plaintiff's FOIA Request, contrary to the factual and legal showing Plaintiff made demonstrating her entitlement to expedition.

84.     Defendant is in violation of FOIA.

85.     Plaintiff is being irreparably harmed by reason of Defendant's violation of FOIA. Plaintiff is being denied information to which she is statutorily entitled to on an expedited basis and that is important to carrying out Plaintiff's functions as an investigative journalist.   Plaintiff will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

86.     Plaintiff has no adequate remedy at law.

87.     Plaintiff is entitled to seek immediate judicial relief for DHS's denial of expedited processing. 5 U.S.C. § 552(a)(6)(E)(iii) ("Agency action to deny … a request for expedited processing pursuant to this subparagraph … shall be subject to judicial review.") *See also Pub. Health & Med. Pros. for Transparency v. Food & Drug Admin.*, 2023 WL 3335071, (N.D. Tex. 2023) ("If an agency denies a request for expedited processing under FOIA, the decision is subject to immediate judicial review.")

   **WHEREFORE** as a result of the foregoing, Plaintiffs pray that this Court:

   A.     Enter a preliminary and permanent injunction compelling Defendant to process Plaintiff's FOIA request on an expedited basis.

   B.     Order Defendant to conduct a search or searches reasonably calculated to uncover all records responsive to Plaintiffs' FOIA Request;

   C.     Order Defendant to produce, within twenty days of the Court's order, or by such other date as the Court deems appropriate, any and all non-exempt records responsive to Plaintiffs' FOIA Request and indexes justifying the withholding of any responsive records withheld in whole or in part under claim of exemption;

D.     Enjoin Defendant from continuing to withhold any and all non-exempt records

        responsive to Plaintiffs' FOIA Request;

E.     Enjoin Defendant from assessing fees or costs for Plaintiffs' FOIA Request;

F.      Retain jurisdiction over this matter as appropriate;

G.     Award Plaintiffs their costs and reasonable attorneys' fees in this action as

        provided by 5 U.S.C. § 522(a)(4)(E); and

H.     Grant such other and further relief as this Court may deem just and proper.


Dated: December 21, 2023              Respectfully submitted,

                                          /s/ Samuel Everett Dewey
                                      SAMUEL EVERETT DEWEY
                                      (No. 3838910)
                                      Chambers of Samuel Everett Dewey, LLC
                                      Telephone:  (703) 261-4194
                                      Email:  samueledewey@sedchambers.com

                                       DANIEL D. MAULER
                                       (No. 3845090)
                                       The Heritage Foundation
                                       Telephone:  (202) 617-6975
                                      Email:  Dan.Mauler@heritage.org

                                      *Counsel for Plaintiff*